THRASHER, et al. *v.* RAGAN, et ux.

No. 39783          November 28, 1955          83 So. 2d 445

*W. C. Sweat, Sr., W. C. Sweat, Jr.,* Corinth, for appellants.

*Orma R. Smith,* Corinth, for appellees.

McGEHEE, C. J.

This is a suit brought by the appellants, Mrs. Modena Thrasher, and Mrs. R. C. (Juanita) Baggett, to reform a deed to a strip of land 5½ feet in width, north and south, and 80 yards in length, east and west, off the north side of a tract of land containing about two acres which the appellants had purchased on the same occasion from the appellees, the deed to the 5½-foot strip in question having been originally executed unto them on September 7, 1946, about one week subsequent to the execution of the deed to the remainder of the two-acre tract, by the appellees E. F. Ragan, et ux, Verna Ragan, and which deeds were sought to be corrected on March 7, 1950, because the boundary line of each tract running north and south had been erroneously described as so many rods instead of so many yards or feet. The relief sought by the bill of complaint was denied by the trial court and there was a decree in favor of the appellees on their cross bill, adjudging and decreeing them to be the owners of a life estate in the 5½-foot strip of land, and cancelling any claim of the appellants therein so far as such claim might affect such life estate.

The testimony of the appellees did not support the theory that they intended to reserve a life estate in the 5½-foot strip of land. The testimony of the appellee E. F. Ragan and of the attorney who prepared the deeds

for him is that the grantors intended to reserve unto themselves the 5½-foot strip of land for use as a passageway only until such time as the remaining land owned, but not then being sold by them, should thereafter be sold. There is no dispute in the evidence that the reason for this reservation in this deed was that the grantors did not want to cut themselves off from the use of a passageway over this 5½-foot strip, running east and west, to the new U. S. Highway 45 from the.back, or east, side of that part of their home property which they were retaining, and to the homes of their friends, neighbors and relatives. The home place of the grantors fronted old U. S. Highway 45 to the west, and they were selling to the appellants approximately two acres off the east, or back, side of their home place, which would abut all the way on U. S. Highway 45 to the east, and which two-acre tract was being conveyed in two separate deeds, one describing the 5½-acre strip on the north side of the two-acre tract and the other remainder thereof.

In the deeds to the 5½-foot strip of land, one executed on September 7, 1946, and the other March 7, 1950, there was contained, following the granting clause of general warranty and the description of the strip of land, these words: ''The grantors herein reserve a life estate in and to the above described property unto themselves and their heirs.'' However, the effect of the testimony of Mr. Jackson, a brother of Mrs. Thrasher, and of course the uncle of her daughter, Mrs. Baggett, and who acted on their behalf in negotiating for the purchase of the land for a residence site for them is that all that Mr. Ragan, acting for himself and wife, as grantors, wanted was the right to pass over the 5½-foot strip in going to and from the land that they were retaining, when traveling east and west to and from their home to the new highway toward the east; that he suggested to Mr. Ragan that if he would have the attorney prepare a permit giving the grantors that right he would get the

grantees to sign the same; that nothing was said in regard to anything being put in the deed which would reserve a life estate in the 5½-foot strip of land itself; and that it was understood that gaps were to be constructed and maintained by the grantors in the fences at the east and west end of the 5½-foot strip of land being sold, the gaps to be located where the fences would cross the same from the south.

The proof disclosed without dispute that the only use made by the grantors of this 5½-foot strip of land during the eight years following the original purchase thereof by the appellants was as a passageway to and from the new Highway 45 from the land retained by the grantors, until Mrs. Thrasher permitted a tourist court sign to be erected near the north boundary of said strip and collected the sum of $5 therefor from the advertiser. Her action in that behalf resulted in the appellees then destroying the gap and the fence which they had built between the land retained by them and that sold to the appellants, thereby necessitating the filing of this suit by the appellants to have their rights determined in the premises.

While the answer of the appellees denied that they sold to the appellants the north 5½feet of said land, subject only to an easement for passageway purposes, it nevertheless averred that "defendants agreed to convey the complainants the north 5-½feet also, possession to be effective when the land, owned by them and adjacent to the land which complainants were purchasing, was sold, having in mind that the 5-½ foot strip would be retained for their use, and the use of their family, until it was sold and transferred to outsiders." And elsewhere in the answer the appellees averred "that they requested their attorney to prepare the necessary papers to convey the land to complainants * * * reserving the north 5-½ feet until the land adjoining it, and then owned by defendants, had been sold * * *". Such was the

testimony of both Mr. Ragan and the attorney who at his instance prepared the deed.

There is a vast difference between reserving an easement over land which is being conveyed, to continue as long as the grantor remains the owner of the land retained by him, and in reserving a life estate in the land then being sold. Under the former, the easement would terminate upon the sale by the grantor of the land he retains, whereas the reservation of a life estate in the land itself may continue as a limitation on the fee in the land for a period of many years, and long after the land retained by the grantor has been sold.

Not only did the answer of the appellees make the concessions hereinbefore stated but Mr. Ragan testified that in the outset that he told Mr. Jackson, representative of the grantees, that a 5½-foot strip off the north side of the two acres being sold, was not for sale at all and that on that basis the grantees "could either take it or leave it," but he further testified that thereafter Mrs. Ragan told him that he had been too hard on Mr. Jackson (in his conversation on the ground before the deed was prepared) and that he then went to the home of Mr. Jackson and told him that he would let the 5½-foot strip go with the remainder of the two-acre tract whenever the other land being retained by him was sold. And as hereinbefore stated, the testimony as a whole discloses that the mutual intention and purpose of both parties was that the grantors were to have the right to pass over this 5½-foot strip, east and west, from their home to the new highway as long as they continued to be the owners of the land off of which the two parcels sold to the appellants had been taken. Moreover, the draftsman of the deed was so instructed, but being doubtful as to just how the deed should be written, he failed to carry out his instructions. Mr. Ragan testified that: "If it had been wrote according to my instructions it would have been wrote to go back there when the place was sold, that was the

instructions I give them." Q. "Then this deed wasn't written according to your instructions was it?" A. "No sir." Q. "The only use then you have made there of that land for this last eight years, is to go through those gaps back and forth isn't it?" A. "Yes sir." Q. "And you have never made any claim to this five and one-half foot strip except the right to go through there between these gaps from one side of the field to the other?" A. "That was all the use I had for them." Q. "And that is all the claim you have made to it during that time?" A. "Yes sir, I didn't have any claim to make it was mine, I reserved it." Q. "Well you thought you had reserved it until you sold it, but now you realize you have reserved it for your life, for yourself and your heirs haven't you?" A. "Well that's the way it has turned out." Q. "Turned out different from what you intended it to?" A. "From the way I instructed the deed wrote, yes."

██ █ It seems that the grantees and their representative, Mr. Jackson, assumed that the deed was prepared according to the instructions given the draftsman, and that they had not observed that it attempted to reserve a life estate unto the grantors until after the controversy arose with reference to Mrs. Thrasher, one of the grantees, having authorized the placing of a tourist court sign thereon and had collected compensation therefor, and for which right Mr. Ragan claimed to be entitled to the charge or fee paid therefor by the advertiser.

After careful consideration of the pleadings and all of the testimony, we have concluded that the appellants were entitled to have the deed reformed so as to carry out the intention of the parties, and reserving merely an easement in favor of the grantors, or the survivor of them, to cross the 5½-foot strip, east and west, until the remainder of their home place shall have been sold, such easement to be personal unto them and not to be an indefinite covenant running with the land. Of course if

the home place of the grantors is not sold during their lives or the life of the survivor of them, the easement would continue until the home place is sold, since the testimony is that the right to cross over the 5½-foot strip of land was to be reserved until the land then being retained by the grantors is sold.

It may be that the attorneys of record can agree upon the form of a judgment to be entered by the Clerk of this Court in compliance with the views hereinbefore expressed; otherwise, the attorneys for the appellants may submit such a judgment for entry, subject to the approval of this Court.

Reversed and judgment here for the appellants.

*Hall, Lee, Kyle* and *Holmes, JJ.,* concur.